___ FILED ___ LODGED
___ RECEIVED ___ COPY

DEC 0 8 2003

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CA 04- 30053- MAF

Global One Enterprises LLC,       )   No. CIV-03-2035-PHX-ROS
                                  )
            Plaintiff,            )   **ORDER**
                                  )
vs.                               )
                                  )
Chemical Light, Inc.,             )
                                  )
            Defendant.            )
_____)

On October 14, 2003, Omniglow Corporation ("Omniglow") filed a declaratory judgment action against Global One Enterprises LLC ("Global One") in the United States District Court for the District of Massachusetts. Omniglow's Complaint seeks a declaration invalidating U.S. Patent No. 6,619,808 (the "'808 patent"), a patent directed to chemiluminescent devices. Shortly thereafter, on October 21, 2003, Global One filed a Complaint in this Court against Chemical Light, Inc ("Chemical Light"), Omniglow's customer. The Complaint accuses Chemical Light of infringing the '808 patent. Pending before the Court is Chemical Light's Motion to Transfer this case to the District of Massachusetts, or, in the alternative, to Stay the Cause [Doc. #9]. Also pending is Global One's Motion for a Preliminary Injunction. [Doc. #2]. For the reasons stated below, the Motion to Transfer is granted. Decision on the Motion for Preliminary Injunction is deferred to the transferee court.

**BACKGROUND**

**A.    Facts and Procedural History**

Plaintiff Global One is an Arizona corporation and a distributor of chemiluminescent devices known as "light sticks." (Mem. in Supp. of Mot. for Prelim. Inj. at 1.) Light sticks

1  are typically sold as novelty items at concerts and other events. (Id.) They consist of a

2  flexible plastic shell with chemicals inside. (Id.) Bending the shell allows the chemicals to

3  mix, causing the stick to light up. (Id.)

4       On September 16, 2003, the United States Patent and Trademark Office awarded the

5  '808 patent to Aaron Pelto, President of Global One. (See Compl. at Exh. A, [Doc. #1].) (Id.)

6  The '808 patent claims a light stick in which a single color of light produced by a

7  chemiluminescent reaction is transmitted through a multi-colored casing to produce a multi-

8  colored effect. (Id.)

9       Global One sells light sticks covered by the '808 patent under the name "TYE DYE."

10  (Mem. in Supp. of Mot. for Prelim. Inj. at 1.) Global One's TYE DYE sticks have plastic

11  cases that are divided into sections of different-colored plastic. (Id.) The colors are arranged

12  in a swirling, candy-cane design. (Id.)

13       Defendant Chemical Light, Inc. is an Illinois corporation with its principal place of

14  business in Vernon Hills, Illinois. (Compl. ¶ 4.) It sells light sticks with multi-colored

15  casings under the name "Tri-Color Swirl." (See Mot. for Prelim. Inj. at Exh. A.) Global One

16  alleges that Chemical Light's "Tri-Color Swirl" products infringe the '808 patent. (Compl.

17  ¶ 11.)

18       Chemical Light purchases all of its "Tri-Color Swirl" products from Omniglow

19  Corporation. (Def.'s Mot. to Transfer at 3.) Omniglow is a Delaware corporation with its

20  principal place of business in Massachusetts and is not a party to this lawsuit. (Def.'s Mot.

21  to Transfer at Exh. E. ¶4.) It is the predominant supplier of chemiluminescent products in

22  the world. (Def.'s Opp. to Mot. for Prelim. Inj. at 10.)

23       Omniglow and Global One have a history of patent disputes. Roughly two years ago,

24  Omniglow accused Global One of infringing certain Omniglow patents. (Def.'s Opp. to Mot.

25  for Prelim. Inj. at 10.) According to Omniglow, "extensive correspondence" between it and

26  Global One's attorney ensued and "Global One eventually revamped its product line to

27  include a colored plastic casing, as related to the '808 patent." (Id.) Omniglow asserts that

28

1   it did not find Global One's new product (the TYE DYE) to be infringing, "since colored
2   casings are considered old in the industry and are now the subject of unexpired patents."
3   (Id.)

4       In early 2002, both Omniglow and Chemical Light purchased a number of Global
5   One's TYE DYE light sticks. (Id.) According to Chemical Light, the companies purchased
6   the products from Global One instead of manufacturing them directly "because [they]
7   provided something different from then currently offered items" and because they wanted to
8   quickly "capitalize on a fad." (Id.)

9       Eventually, Omniglow and Chemical Light "chose to look for another source" of swirl
10  products. (Id.) Omniglow now imports swirl light sticks from China (Def.'s Mot. for
11  Transfer at 3.) Under the terms of a contract that it and Chemical Light have entered into,
12  Omniglow supplies Chemical Light with 100% of its "Tri-Color Swirl" light sticks. (Decl.
13  of John L. Beshears ¶ 3, attached as Exh. F. to Def.'s Mot. to Transfer.) Both Omniglow and
14  Chemical Light maintain that Global One's TYE DYE product "is not patentable and may be
15  freely copied." (Def.'s Mot. to Transfer at 3.)

16      On September 26, 2002, 10 days after the '808 patent issued, Global One sent a cease
17  and desist letter to Chemical Light and threatened legal action if it did not immediately cease
18  sales of its "Tri-Color Swirl" lights sticks. (Def.'s Mot. to Transfer at Exh. A.) On
19  September 30, 2003, Global One sent a cease and desist letter to Omniglow and also
20  threatened legal action if it did not stop importing and distributing swirl products. (Id. at
21  Exh. B.)

22      On October 14, 2003, Omniglow filed a declaratory judgment action in the United
23  States District Court for the District of Massachusetts, seeking a declaration that the '808
24  patent is invalid. (See Def.'s Mot. to Transfer at Exh. E.) Seven days later, on October 21,
25  2003, Global One filed a Complaint in this Court against Chemical Light, alleging
26  infringement of the '808 patent. [Doc. #1.]    It followed this up with a motion for a
27  preliminary injunction the next day. [Doc. #2.]

28

- 3 -

1    On November 7, 2003, Chemical Light filed a Motion to Transfer this case to the

2  District of Massachusetts or, in the alternative, to Stay the action. [Doc. #9.] The Court now

3  turns to that Motion.

4                              **THE CONTENTIONS**

5    In its Motion, Chemical Light argues that the "first-to-file" rule favors transfer of this

6  later-filed action to the District of Massachusetts, the district where Omniglow's declaratory

7  judgment action is pending.  (Def.'s Mot. to Transfer at 3-6.)  As Chemical Light points out,

8  the Massachusetts action was filed before the Arizona action, the issues in the two lawsuits

9  are the same, and the parties are closely related and their interests are identical.  (Id.)

10    Global One counters that the first-to-file rule is inapplicable because the parties in the

11  two pending actions are different.  (Pl.'s Opp. to Def.'s Mot. to Transfer at 2, [Doc. #14].)

12  It also contends that the interests of justice weigh against applying the first-to-file rule

13  because "forum shopping" was the "only motive" for Omniglow's filing and because "all

14  interests are best served" by litigation in Arizona.  (Id.)

15                                **DISCUSSION**

16  **A.    Jurisdiction**

17    The Court has jurisdiction over this action under 28 U.S.C. § 1338 (actions relating

18  to patents).

19  **B.    Choice of Law**

20    Federal Circuit law governs Chemical Light's Motion to Transfer. The Federal Circuit

21  has determined that "the question of whether a properly brought declaratory action to

22  determine patent rights should yield to a later-filed suit for patent infringement raises issues

23  of national uniformity in patent cases, and invokes the special obligation of the Federal

24  Circuit to avoid creating opportunities for dispositive differences among the regional

25  circuits." Genentech v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed. Cir. 1993).  This Order,

26  however, cites to cases from other courts of appeals from time to time where not inconsistent

27  with Federal Circuit law.

28

- 4 -

1  **B.    Legal Standard**

2  **1.    The First-to-File Rule**

3  　　Federal district courts are courts of coordinate jurisdiction and equal rank, and must

4  exercise care to avoid interfering with each other's affairs. The first-to-file rule is a doctrine

5  of federal comity that permits a district court to decline jurisdiction over an action when a

6  complaint involving the same or similar parties and issues has already been filed in another

7  district. See Kerotest Mfg. Co. v. CO2 Fire Equip. Co., 342 U.S. 180, 185-86 (1952). The

8  district court may in its discretion transfer, stay, or dismiss the second-filed action under

9  these circumstances.[1]  Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir.

10  1991). The underlying purpose of the first-to-file rule is to promote efficiency and the rule

11  should not be disregarded lightly. Church of Scientology v. United States Dep't of the Army,

12  611 F.2d 738, 750 (9th Cir. 1979); Alltrade, 946 F.2d at 625. The goal is avoidance of both

13  an unnecessary burden on the federal judiciary and of conflicting judgments. Id.

14  　　Such considerations have favored application of the rule in patent disputes where the

15  risk of conflicting determinations as to the patent's validity and enforceability are clear.

16  See Pacesetter Sys., Inc. v. Medtronics, Inc., 678 F.2d 93, 95 (9th Cir. 1982). In such cases,

17  the "first-to-file" rule applies whether or not the first-filed action is a declaratory action.

18  Genentech, 998 F.2d at 938 (Fed. Cir. 1993) ("The considerations affecting transfer or

19  dismissal in favor of another forum do not change simply because the first-filed action is a

20  declaratory judgment action.") When the declaratory action can resolve the various legal

21  relations in dispute and afford relief from the controversy that gave rise to the proceeding,

22  ———————————————

23  　　[1]There seems to be some confusion as to whether a court's power to transfer a second-
filed action derives from its inherent powers, from the transfer statute, 28 U.S.C. § 1404(a),
24  or from both.  Compare Plantronics, Inc. v. Clarity, LLC, No. 1:02-CV-126, 2002 WL
32059746, at *3 (E.D. Tenn. July 17, 2002) (transferring under inherent powers but not under
25  §1404(a)) with GT Plus, Ltd. v. Ja-Ru, Inc., 41 F. Supp.2d 421, 427 (S.D.N.Y. 1998)
26  (transferring under both inherent powers and § 1404(a)).  The precise source of the power,
however, does not make much difference – the same equitable considerations apply to the
27  both the first-to-file and § 1404(a) analyses. J. Lyons & Co. Ltd. v. Republic of Tea, Inc.,
28  892 F. Supp. 486, 491-92 (S.D.N.Y. 1995).

1  the first-filed declaratory action is entitled to precedence over the later-filed patent
2  infringement action. Id.

3        The presumption favoring the first-filed action, however, is not irrebuttable. Novo
4  Nordisk of North America v. Genentech, Inc., 874 F. Supp. 630, 632 (S.D.N.Y. 1995). The
5  trial court's discretion serves to temper the first-filed rule. Serco Servs. Co., L.P. v. Kelley
6  Co., Inc., 51 F.3d 1037, 1038. Factors to be considered in exercising this discretion include
7  the convenience and availability of witnesses, the absence of jurisdiction over all necessary
8  and desirable parties, the possibility of consolidation with related litigation, or considerations
9  relating to the real party in interest. Id. (citing Genentech, Inc. v. Eli Lilly & Co., 998 F.2d
10 at 937-38.) The party asserting exceptions to the first-filed rule bears the burden of showing
11 that equitable considerations recommend the later action and must overcome the "'strong
12 presumption in favor of the first-filed suit.'" GT Plus, Ltd., 41 F. Supp. 2d at 424 (quoting
13 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 121 (S.D.N.Y. 1994))
14 (internal citation omitted).

15 **B.    Analysis**

16 **1.    Who Decides?**

17       The Federal Circuit has not addressed the question of which court should decide the
18 first-to-file question. Some courts, including the Ninth Circuit, have taken the approach that
19 the court in the first-filed action ordinarily should decide whether the first-filed ruled applies.
20 See, e.g., Alltrade, Inc., 946 F.2d at 628 ("normally, [the argument as to which action should
21 proceed] should be addressed to the court in the first-filed action.") In these jurisdictions,
22 the court in the second-filed action will stay the action before it to allow the first court to
23 resolve the issue. See id. In certain cases, however, the court in the second-filed action may
24 decide whether to give effect to the first-to-file rule. See Pacesetter Sys., Inc., 678 F.2d at
25 98. This is "particularly true" in cases where "the patentee and the customer are involved in
26 one action and the patentee and the manufacturer [or importer] are involved in the second
27 action." Id.

28

- 6 -

1    Given the circumstances of this case, this Court will decide which of the two actions

2    should have precedence. First, this case, like the exception to the general rule described in

3    Pacesetter, involves the patentee and a "customer." Id. Second, Global One has not

4    responded to Omniglow's Massachusetts lawsuit and apparently does not intend to until

5    January. (See Pl.'s Opp. to Def.'s Mot. to Transfer at 9 ("Global Ones's responsive pleading

6    in the Massachusetts action is not due until January 2004.")) It is therefore unlikely that the

7    Massachusetts court will consider the transfer issue anytime soon. Third, Global One has

8    filed a preliminary injunction motion in this Court. This requires the Court to give immediate

9    attention to Defendant's Motion.

10   **2.    Applicability of the First to File Rule**

11   A court considers three threshold factors in deciding whether to apply the first-to-file

12   rule in a transfer motion: (1) the chronology of the two actions; (2) the similarity of the

13   parties; and (3) the similarity of the issues. Alltrade, Inc., 946 F.2d at 625-626; Ward v.

14   Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994). All three factors are satisfied here.

15   **a.    Chronology of the Two Actions**

16   The first factor, the chronology of the two actions, supports application of the first-to-

17   file rule. Omniglow filed its declaratory judgment Complaint in Massachusetts on October

18   14, 2003. (See Def.'s Mot. to Transfer at Exh. 1.) Global One filed its Complaint in this

19   District seven days later, on October 21, 2003. (See Doc. #1).

20   **b.    The Similarity of the Parties**

21   The Court next turns to the similarity of the parties. Global One argues that the first-

22   to-file doctrine applies only where the two lawsuits involve the exact same parties. (Pl.'s

23   Opp. to Def.'s Mot. to Transfer at 5.) These arguments misapprehend the law. The question

24   is "whether the issues and parties are such that the disposition of one case is dispositive of

25   the other." Katz v. Lear Siegler, Inc., 909 F.2d 1459, 1463 (Fed. Cir. 1990) (emphasis

26   added). As the court pointed in Abbott v. Mead Johnson & Co., "a precise identity of the

27   parties is simply not required." 47 U.S.P.Q.2d 1305 (S.D. Ohio 1998) (citing Texas

28

1  Instruments, Inc. v. Micron Semiconductor, 815 F. Supp. 994, 997 (E.D. Tex. 1993) and

2  EBW, Inc. v. Environ Products, No. 1:96-cv-144, 1996 WL 550020, at *3 (W.D. Mich.

3  1996)). The parties must only be sufficiently similar so that resolution of one case will

4  dispose of the other. See id.

5      There is a sufficient similarity between Omniglow and Defendant Chemical Light to

6  invoke the first-to-file rule. Omniglow supplies Chemical Light with all of its "Tri-Color

7  Swirl" light sticks and 44% of Omniglow's sales of swirl products from May 2002 to

8  September 2003 from have been made to Chemical Light. (Decl. of John L. Beshears ¶ 3,

9  attached as Exh. F. to Def.'s Mot. to Transfer.) Omniglow is also contractually obligated to

10 defend Chemical Light in this action and has agreed to indemnify it for any damage award

11 to Plaintiff. (Id.) Moreover, Chemical Light has agreed to be bound by whatever judgment

12 issues in Omniglow's declaratory judgement action. (Decl. of Ronal Gilley ¶ 4, attached as

13 Exh. G. to Def.'s Mot. to Transfer.) Under these circumstances, Omniglow and Chemical

14 Light's interests are sufficiently aligned to apply the first-to-file rule. See Abbott, 47

15 U.S.P.Q.2d 1305.

16      This conclusion is buttressed by consideration of the "customer suit exception" to the

17 first-to-file rule. This exception gives preference to a declaratory judgement action filed by

18 the manufacturer, supplier, or importer over a suit filed against a customer who merely resells

19 the accused products. See Kahn v. General Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir.

20 1989); Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737-38 (1st Cir. 1977). See also

21 Rhode Gear U.S.A., Inc., 225 U.S.P.Q. 1256 (D. Mass. 1985) (extending the exception from

22 manufacturers to importers or suppliers); ATSPI v. Sharper Image, Inc., 677 F. Supp. 842,

23 843 (W.D. Penn. 1988) (same). At the "root" of the preference "is the recognition that, in

24 reality, the manufacturer is the true defendant in the customer suit." Codex, 553 F.2d at 737-

25 38. "[I]t is a simple fact of life that a manufacturer must protect its customers, either as a

26 matter of contract, or good business, or in order to avoid the damaging impact of an adverse

27 ruling against its products." Id. While the exception is usually presented to justify

28

1  proceeding with a manufacturer's later-filed lawsuit, in this case it supports transfer.

2  Omniglow, not Chemical Light, is the "true defendant" in this case.

3  **c.    The Similarity of the Issues**

4  The final factor is the similarity of the issues presented.   The Massachusetts and

5  Arizona actions involve the same patent and the same allegedly infringing products. The

6  central question in both actions is whether the '808 patent is valid and enforceable. There is

7  thus sufficient similarity between the two actions to satisfy this factor of the first-to-file rule.

8  In sum, the first-to-file rule applies because: (1) the Massachusetts action was filed

9  before the Arizona action, (2) the parties in the two cases are substantially similar, and (3)

10  the issues in the two actions are the same.

11  **2.    Equitable Considerations**

12  The Court must next determine whether equitable considerations do not support giving

13  precedence to the first-filed Massachusetts action, because a court need not proceed by

14  mechanical reference to filing dates. Genentech, 998 F.3d at 937 (exceptions to the first-to-

15  file rule are not rare and are made when justice or expedience requires).    "There must,

16  however, be sound reason that would make it unjust or inefficient to continue the first-filed

17  action." Id. Such reasons include the convenience and availability of witnesses, the absence

18  of jurisdiction over all necessary or desirable parties, the possibility of consolidation with

19  related jurisdiction, or considerations relating to the real party in interest. Id. The existence

20  of forum shopping may also play a role in the court's equitable balancing. Id.

21  No sound reason exists to depart from the first-to-file rule here.  There is a strong

22  presumption in favor of the forum chosen by the plaintiff in the first-filed suit. 800-Flowers,

23  Inc., 860 F. Supp. at 131.  Global One has not met its burden of showing that it would be

24  "unjust or inefficient" to transfer this case to that forum. See Genentech, 998 F.3d at 93 .

25  Global One argues that the Massachusetts action should not be entitled to precedence

26  because Omniglow served it after Global One filed its Complaint and motion for preliminary

27  injunction against Chemical Light. (Pl.'s Opp. to Def.'s Mot. to Transfer at 7.) Global One,

28

- 9 -

however, had knowledge of the Massachusetts action when it filed papers in this Court. (See Mem. in Supp. of Mot. for Prelim. Inj. at 5 n.1 ("Omniglow filed suit on October 14, 2003 in its home state of Massachusetts[.]")) Moreover, "a federal action is commenced by the filing of the complaint, not by service of process."    Pacesetter Sys., Inc., 678 F.2d at 96 n.3 (citing Fed. R. Civ. P. 3). "It is thus the filing of actions in coordinate jurisdictions that invokes considerations of comity." Id.

Global One also argues that Massachusetts does not provide a convenient forum for this lawsuit.[2] (Pl.'s Opp. to Def.'s Mot. to Transfer at 8.) The only evidence that Global One has offered to justify this statement is the fact that it is based in Arizona and that its president, Aaron Pelto, the inventor of the '808 patent, lives in Arizona. (Id.) But these facts alone do not compel abandonment of the first-to-file rule. Party witnesses, like Mr. Pelto and any other employees that Global One intends to call, are presumed to be willing to testify in either forum despite the inconvenience that one of the forums would entail. See Moore's Federal Practice, § 111.13[1][f][iii] (Matthew Bender 3d ed. 2003) (citing cases).

Global One further contends that this case should not be transferred because "forum shopping was the only motive" for the filing of the Massachusetts action. (Pl.'s Opp. to Def.'s Mot. to Transfer at 6.) The fact that Omniglow filed its declaratory judgement action in its home state does not require the Court to depart from the first-to-file rule. As the court explained in Roadmaster Corp v. NordicTrack, Inc., "[f]orum shopping, as condemned in Genenetech, is seeking out a forum solely on the basis of having the suit hear in a forum where the law or judiciary is more favorable to one's cause than in another." 29 U.S.P.Q.2d 1699, 1701 (N.D. Ill. 1993). "[F]iling suit in a forum that is convenient to the party filing " on the other hand, "is not the type of forum shopping denounced in Genenetech."[3]    Id.

_____

[2]The parties do not dispute that the Massachusetts court has subject-matter jurisdiction, personal jurisdiction over the parties, and proper venue.

[3]Indeed, one of the purposes of the Declaratory Judgment Act was to level the playing field when it comes to convenience of forum. As the Supreme Court stated, the Declaratory Judgment plaintiff, though not granted a head start, is "given an equal start in the race to the

1    Omniglow has its principal place of business in Massachusetts and has a valid reason for

2    instituting a declaratory judgment action against Global One there.  Global One has not

3    demonstrated that Omniglow manipulated or delayed the situation or otherwise acted

4    improperly in winning the race to the courthouse.

5         Finally, the fact that Global One has requested preliminary injunctive relief does not

6    require the Court to disregard the first-to-file rule.  In Abbott Laboratories, the court

7    transferred a second-filed patent infringement action to the first-filed forum even though a

8    motion for preliminary injunction had been filed in that court.  47 U.S.P.Q.2d 1305.  The

9    court explained that "at least one court of appeals has noted that it would be reversible error

10   to proceed with this action and enter a preliminary injunction in violation of the first-to-file

11   rule."  Id. (citing West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 732

12   (5th Cir. 1985).  The court also pointed out, that as a practical matter, the preliminary

13   injunction motion may proceed in the transferee district.  Id.  Global One's preliminary

14   injunction motion in this case is now fully briefed.  The transferee court can promptly

15   consider it.

16                                    **CONCLUSION**

17        The first-to-file rule allows this Court to transfer this later-filed action to the District

18   of Massachusetts.  Alltrade, 946 F.2d at 628-29.  Based on the circumstances of this case,

19   transfer is appropriate.  Rather than allowing two parallel suits to go forward, it is more

20   appropriate for one court to adjudicate the validity of the '808 patent to avoid duplication and

21   the possibility of inconsistent results.

22        Accordingly,

23        **IT IS ORDERED** that Defendant Chemical Light, Inc.'s Motion to Transfer [Doc.

24   #9] is **GRANTED**.  This civil action is hereby **TRANSFERRED** to the United States

25   District Court for the District of Massachusetts.

26

27   _____

28   courthouse."  Kerotest Mfg. Co., 342 U.S. at 185.

- 11 -

1    **IT IS FURTHER ORDERED** that Defendant Chemical Light's Inc.'s alternative
2  Motion to Stay this Cause [Doc. #9] is **DENIED AS MOOT**.

3    **IT IS FURTHER ORDERED** that Plaintiff Global One LLC's Motion for a
4  Preliminary Injunction [Doc. #3] is **DEFERRED** to the transferee court.

5    **IT IS FURTHER ORDERED** that the preliminary injunction hearing in this matter
6  scheduled for Monday, December 8, 2003 is hereby **VACATED**.

7

8    DATED this _4_ day of December, 2003.

9

10

11                            Roslyn O. Silver
                             United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23    I hereby attest and certify on _12-8-03_
      that the foregoing document is a full, true and correct
24    copy of the original on file in my office and in my
      custody.

25              CLERK U.S. DISTRICT COURT
                   DISTRICT OF ARIZONA

26    By_____ Deputy

27

28